FORDYCE AND SWANSON, RECEIVERS, v. B. L. CULVER.

No. 23.

1. **Injury to Brakeman — Case in Judgment.**—Plaintiff, a brakeman of eight or ten years service, attempted to go to the top of a box car upon which he was braking; the hand-hold on top of the car pulled out, and he was thrown to the ground and seriously injured. The cause of the hand-hold pulling out was because the top of the car to which it had been screwed was rotten. The condition of the hold was not known to the plaintiff, was not patent, and could not have been known by the exercise of ordinary diligence, and no rule of the company required him to inspect the hand-hold before using it. He had noticed a good many roofs rotten on the road, and had worked on cars with rotten roofs, but never noticed any hand-holds loose. A verdict for $5000 was affirmed.

2. **Case Approved.** — Fordyce v. Withers, 1 Texas Civil Appeals, 540, approved.

3. **Charge in Such Case.**—See opinion for the charge in the case held to be a correct statement of the law applicable to the facts.

4. **Erroneous Charge Asked.**—A charge asked, that if at the time he received the injury plaintiff knew that there were a number of cars on the road with rotten tops, and that in attempting to climb upon the same in the way in which he was climbing when he was hurt he was liable to receive an injury by reason of the pulling out of the hand-hold on top of the car, then he assumed all risk incident to this condition of affairs, and if he was thereby injured he could not recover, was inapplicable.

5. **Excessive Verdict.**—Facts upon which a verdict for $5000 was held not excessive.

APPEAL from Smith. Tried below before Hon. FELIX J. McCORD.

*Finley, Marsh & Butler*, and *Sam H. Ward*, for appellants.— 1. The ninth clause of the charge was erroneous. Railway v. Bell, 75 Texas, 50; Railway v. McCarthy, 64 Texas, 635; Railway v. Lyde, 57 Texas, 509; Ry. Acc. Law, 300; Whitaker's Smith on Neg., 124.

2. The eleventh clause of the charge was erroneous. Green v. Cross and Eddy, 79 Texas, 130; Chatham v. Jones, 69 Texas, 744; Railway v. Murphy, 46 Texas, 356; Railway v. Cock, 68 Texas, 713; Railway v. Levi & Bro., 59 Texas, 674; Railway v. Davidson, 61 Texas, 204.

3. The court erred in refusing to give special instructions number 6, requested by the defendants. [See opinion.] Green v. Cross, 79 Texas, 130; Railway v. Sommers, 71 Texas, 700.

*Duncan, Jones & Cooley,* for appellee.—The master's duty to the servant in regard to furnishing safe machinery is correctly stated in the charge of the court, taken as a whole; and portions of same, as in this case, will not be segregated for the purpose of criticism. Railway v. O'Fiel, 78 Texas, 487; Railway v. McElyea, 71 Texas, 387; Railway v. Silliphant, 70 Texas, 623; Railway v. McNamara, 59 Texas, 257; Railway v. Aylward, 79 Texas, 675.

GARRETT, CHIEF JUSTICE —This suit was brought by B. L. Culver against the defendants, as receivers of the St. Louis, Arkansas & Texas Railway in Texas, to recover damages for personal injuries received by the plaintiff while in the employ of defendants and in the discharge of his duties as brakeman, and alleged to have been caused by a defective hand-hold upon a car which the plaintiff was mounting, by reason of the rotten condition of the wooden roof to which the hand-hold was attached by screws.

Trial was had by jury, and judgment was rendered in favor of plaintiff upon a verdict in his favor for $5000.

Briefly stated, the facts are, that on the 28th day of May, 1890, the plaintiff was in the employment of the defendants in the capacity of brakeman. He was an experienced railroad man of eight or nine years service, and was familiar with the duties of brakeman. On that day, while attempting to go on top of a box car in the train upon which he was braking, the hand-hold on top of the car pulled out and plaintiff was thrown to the ground and seriously injured. The cause of the hand-hold pulling out was because the top of the car to which it had been screwed was rotten.

The condition of the hand-hold was not known to the plaintiff when he attempted to go on top of the car, and it was not open and patent to him, and under the circumstances he could not have known of it by the exercise of ordinary diligence. There was no rule of the defendants which required him to inspect the hand-hold or car before using the hand-hold. It was not customary to inspect the cars above the running gear at inspecting points, where the wheels and other running gear were inspected, but only when the cars were put on the repair tracks. Plaintiff was not a car inspector, but the brakemen were expected to report anything that they saw that was unsafe.

Plaintiff testified that he had noticed a good many roofs being rotten at times, and had seen some of the cars belonging to the system of which the railway in charge of defendants was a part with rotten roofs, and had worked on cars with rotten roofs, but had never noticed any hand-holds loose.

Plaintiff was hurt May 28, 1890, and the trial was had in February, 1891. Before the injury he had been a stout, healthy young man; but

afterwards, up to the time of the trial, had been unable to do any work. He fell about sixteen feet, and in falling his right side struck on a flat car standing on a side track, and he then fell into a ditch alongside of the train, where he lay insensible, with blood running from his nose and mouth, until he was taken up and carried to the hospital. He had hemorrhages from the lungs on account of the injuries, shortly afterwards. He remained in the hospital about a month. He used crutches for awhile, but had discarded them. Dr. Baldwin examined him three or four months after the injury, and found him in a wretched state of health. He was considerably emaciated, had jaundice, and considerable trouble with his lungs. The doctor found his right lung in a congested state, and found scars located on the right side above the fifth or sixth rib, and right over the lung; the liver is just below this region. The lung was hepatized and consolidated, with very little air passing into it. It was caused by stasis, or stagnation of blood in the lungs. The other lung was clear and all right. It was the opinion of the physician that plaintiff's condition was caused from a blow or injury; that a blow was calculated to affect the lung by congestion. On further examination just before the trial, Dr. Baldwin found the condition of the lung still to be hepatized and consolidated in the lower part. Pleurisy, or inflammation of the pleura, was indicated. It was his opinion, that the lung was permanently injured, and on account thereof plaintiff was more liable to cold than if the lung was in its normal condition. It might take pneumonia. Plaintiff could not do the heavy work that he had done, and the lung would be always one great point in breaking down his health. Jaundice was merely a symptom of disease.

There was much other evidence. The effect of all is, however, that the plaintiff was very severely injured, and received internal injuries which resulted in permanently impairing the lower lobe of his right lung, and weakening him so that he would never be capable of doing heavy work again.

In view of the several assignments of error based on the charge of the court, it is set out in full, so far as pertinent.

" 1. The servant in entering the employment of a railway company assumes all the ordinary hazards incident to his employment, but they must be such as are patent—such as he actually knows or could have known by the exercise of ordinary care, or would reasonably be presumed to know.

" 2. The master is bound to use ordinary care to furnish suitable machinery and appliances for the safe discharge of the employe's duty, and to keep them in proper repair, and if he fails to perform his duty in this respect, he is liable to the servant for any damages resulting from his neglect.

" 3. Negligence, in a general sense, is every omission to perform a

duty imposed by law for the protection of one's own person or property or that of another. Negligence, to some extent, should be measured by the character, risk, and exposure of the business under consideration, and the degree of care of all parties is higher when the lives and limbs of themselves or others are endangered than in ordinary cases.

" 4. Ordinary negligence is the want of such care and diligence as reasonably prudent men generally, in regard to the subject matter of injuries under such circumstances as those under consideration, would use to endeavor to prevent the injury complained of

" 5. Contributory negligence is negligence not only upon the part of the one committing the injury, but also upon the part of him upon whom the injury is committed, and by which they both contribute thereto.

" 6. One who is injured by the ordinary negligence of another can not recover damages therefor, if the injured party by his own ordinary negligence or willful wrong proximately contributed to the injury, so that it would not have happened but for his own fault.

" 7. The law required of plaintiff, as brakeman, for his own safe protection, the use of such ordinary care in the performance of the duty of his position as prudent men under similar circumstances would employ.

" 8. The master is called upon to use ordinary care, not only to furnish safe machinery for his servants, but he must also use this care to keep his cars and rolling stock in proper repair, and to employ competent men to inspect their cars, and the failure to perform this duty by their agent would be the failure of the master, that would make him liable if injury resulted to the servant.

" 9. And the master's duty is not performed simply by the employment of competent men to repair and inspect its cars, but must go farther, and see that the cars are actually kept in repair, and a failure so to do would make the master liable if injury results from such failure.

" 10. If you believe from the testimony that plaintiff in the performance of his duty as brakeman, and without negligence on his part, started up the side of the car to set a brake, and when he got up and caught the top hand-rod, that said hand-rod pulled out by reason of the wood to which it was attached being rotten, and he fell to the ground and was injured, and that defendants were negligent as before explained in not keeping said hand-holds safely fastened to prevent injury, and plaintiff was injured thereby, defendants would be liable, and you will so find.

" 11. If plaintiff, however, knew that said hand-hold was not properly fastened, or by the exercise of proper care could have known it, or was negligent in ascending the stepladder, he can not recover. Plaintiff, however, was not called upon to inspect the car before ascending it to fix the brake, to ascertain its condition.

" 12. If the wood to which the hand-hold was attached was rotten, but such defect was not patent, and defendants' agents by the exercise of

ordinary care could have discovered it, and failed to do so, and the plaintiff was injured, defendants would be liable. The defendants, how-ever, would not be liable if they used ordinary care in inspecting the car and in keeping it in repair, nor would they be liable if the defect was hidden, and could not have been discovered by the exercise of ordinary care.''

The several questions presented by the appellant have been heretofore disposed of by this court in Fordyce v. Withers, 1 Texas Civ. App., 540.

An inspection of the entire charge will show that there was no error in the paragraph complained of under the third assignment of error, as fol-lows: '' And the master's duty is not performed simply by the employ-ment of competent men to repair and inspect its cars, but must go fur-ther, and see that the cars are actually kept in repair, and the failure so to do would make the master liable if any injury results from such fail-ure.''

It was unquestionably the duty of the defendants to exercise reasonable care in seeing that the cars were kept in repair, and the charge, taken as a whole, imposes no greater duty upon them.

There is nothing in the evidence to support the contention of the ap-pellants, that it was the duty of the brakeman to inspect the cars. There was no rule of the defendants to that effect; nor did it appear that the brakemen were also inspectors, or that inspection was expected of them. It was only expected that they would report anything that they saw that was unsafe.

The special instruction number 4 requested by the defendants, so far as applicable to the evidence, was included in the charge of the court in chief. It was to the effect, that if the jury believed from the evidence that the plaintiff had the same or equal means of knowing the condition of the hand-hold on the top of the car as did the defendants, and its defect therein was patent, open, and visible, then they should find for the de-fendants.

The seventh assignment of error is as follows:

'' The court erred in its refusal to give special instruction number 6, requested by the defendants, wherein the jury were asked to be instructed substantially as follows: 'That if they should find from the evidence that the top of the box car was rotten, and should further find that the plaintiff did not know that the top was rotten, yet if the evidence showed that at and prior to the time he received the injury he knew there were a num-ber of cars on the road with rotten tops, and that in attempting to climb upon the same, in the way in which he was climbing when he was hurt, was liable to receive an injury by reason of the pulling out of the hand-hold on top of the car, then he assumed all risk incident to this condition of affairs, and if he was thereby injured he could not recover.' ''

The instruction was not applicable. While plaintiff was aware of the

rotten condition of the tops of some of the cars, it does not follow that he knew that they were rotten where the hand-holds were attached. He said he had never noticed hand-holds loose; and the evidence does not show that the cars were so uniformly rotten as to establish a condition of which plaintiff was bound to take notice.

In the case of Railway v. Sommers, 71 Texas, 700, where it was shown that the plaintiff knew that many of the cattle guards were so constructed as to be dangerous to employes operating the train, it was held that such knowledge would put the employes upon notice of their construction generally. The cattle guards, however, were permanent in the nature of their structure, and it was held that a knowledge that many of them were constructed too near the track would lead to a knowledge that all were constructed in the same manner. There was no error in refusing the charge asked.

Upon a careful consideration of all the evidence, we can not say that the verdict of the jury is so clearly excessive that we ought to set it aside.

We find no error for which the judgment ought to be reversed, and it will therefore be affirmed.

*Affirmed*

Delivered March 30, 1893.